**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BLASKET RENEWABLE INVESTMENTS, LLC, <br><br> Petitioner, <br><br> v. <br><br> KINGDOM OF SPAIN, <br><br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 22-cv-02403 (APM)

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.   INTRODUCTION

Petitioner Blasket Renewable Investments, LLC ("Blasket") seeks to enforce against Respondent Kingdom of Spain ("Spain") an arbitration award of €22,006,000 with interest as rendered by a tribunal of the International Centre for Settlement of Investment Disputes ("ICSID"). The award arises out of Spain's breach of its commitments under the Energy Charter Treaty ("ECT").  Spain moved to dismiss for lack of jurisdiction or to stay these proceedings pending its application to annul the award.  After briefing concluded, the D.C. Circuit held in *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088 (D.C. Cir. 2024), that (1) federal district courts have jurisdiction under the Foreign Sovereign Immunities Act (FSIA) to enforce ICSID awards arising out of ECT arbitrations and (2) *forum non conveniens* is not available in proceedings to confirm a foreign arbitral award.  The parties have since filed supplemental briefs to reflect *NextEra Energy*.  But Spain continues to maintain, as it has from the start, that no forum has jurisdiction or authority to issue or enforce the arbitral award because European Union (EU)

law voids any agreement to arbitrate under the ECT as between an EU Member State and investors of another EU Member State.

For the reasons that follow, Spain's Motion to Dismiss the Petition or Stay the Proceedings, ECF No. 14, is denied.

## II.    BACKGROUND

### A.    The Energy Charter Treaty and the ICSID Convention

The ECT is a multilateral investment treaty among 53 contracting parties established "to promote long-term cooperation in the energy field."  Pet. to Enforce Arbitral Award, ECF No. 1 [hereinafter Pet.], Ex. 3, ECF No. 1-3 [hereinafter ECT], art. 2; Resp't's Mot. to Dismiss the Pet. or to Stay the Proceedings, ECF No. 14 [hereinafter Resp't's Mot.], Resp't's Mem. of Law in Supp. of Resp't's Mot., ECF No. 14-1 [hereinafter Resp't's Mem.], at 12–13. Among the contracting parties are the EU; most EU Member States, including Spain and Germany; and several non-EU states.  Pet. ¶¶ 13–15; Resp't's Mem. at 12–13.  The ECT's purpose is to protect investments in the territory of one contracting party by investors located or incorporated in other contracting parties.  ECT art. 26.  As relevant here, Article 26 provides that such investments are protected by each contracting party's "unconditional consent" to international arbitration in the event of a covered dispute.  *Id.* art. 26(3).

The ICSID is one forum in which parties seeking dispute resolution under the ECT may arbitrate.  *Id.* art. 26(4)(a).  The ICSID Convention is a multilateral treaty "aimed at encouraging and facilitating private foreign investment in developing countries."  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017).  Spain, Germany, the United States, and over 100 other nations are ICSID Convention signatories.  *See Database of ICSID Member States*, ICSID, https://perma.cc/2CVA-8AZV.  Signatories agree to recognize ICSID

awards "as binding" and to "enforce the pecuniary obligations imposed by that award" in their courts.  Pet., Ex. 2, ECF No. 1-2, art. 54(1).  The United States' obligation to enforce ICSID awards is codified at 22 U.S.C. § 1650a, which provides that "pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a(a).

### B.      Underlying Dispute and Procedural History

Just before the turn of the century, Spain began offering financial incentives to encourage investments in renewable energy production within its territory.  Pet. ¶ 11.  The corporate predecessors of BayWa r.e. AG ("BayWa"), a company incorporated in Germany, invested in Spanish wind farms in reliance on these promised financial incentives.  *Id.* ¶¶ 1, 11.  But over a decade later, Spain walked and clawed back the subsidies it had previously doled out.  *Id.* ¶¶ 11, 17. Believing this a violation of Spain's commitments under the ECT, BayWa sought arbitration with Spain before the ICSID.  *Id.* ¶ 17.  A tribunal was convened, and it determined, among other things, that (1) the tribunal had jurisdiction over the dispute and (2) Spain had breached its obligation to BayWa under the ECT.  *Id.* ¶¶ 18–20.  It awarded BayWa €22,006,000 with interest at the six-month EURIBOR rate, compounded semi-annually from July 13, 2013, to the date of payment. *Id.* ¶ 21.  Spain, in turn, applied to the ICSID for an annulment of the award.  Resp't's Mem. at 14.

Throughout the initial arbitration and in its application for annulment, Spain argued that the ICSID tribunal lacked jurisdiction to issue an arbitral award because, under EU law, "Article 26 of the ECT does not apply to disputes between an EU Member State and investors of another EU Member State (i.e., 'intra EU-disputes')."  *Id.*

BayWa petitioned for enforcement of the ICSID award in this court in 2022.  *See generally* Pet.  Spain moved to dismiss the action or for a stay pending its annulment application. *See generally* Resp't's Mot.  As litigation progressed, BayWa assigned title to the award to Blasket, who was substituted as the petitioner in this action.  *See* Mot. for Substitution, ECF No. 25, at 1; Minute Order, Aug. 17, 2023.

Several events transpired thereafter.  After briefing concluded, the ICSID denied Spain's application for annulment.  Pet'r's Notice of Decision Den. Spain's Annulment Appl., ECF No. 24 [hereinafter Pet'r's Notice].  In doing so, the ICSID again rejected Spain's argument that it lacked jurisdiction to issue the arbitral award.  Pet'r's Notice, ECF No. 24, Ex. A, ECF No. 24-1 [hereinafter ICSID Annulment Decision], ¶¶ 169–195.  But the matter was nevertheless stayed pending resolution of three related appeals before the D.C. Circuit.  *See* Order to Show Cause, ECF No. 27; Minute Order, Aug. 24, 2023.  Those appeals were decided in 2024 by *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088 (D.C. Cir. 2024), where the D.C. Circuit held, as relevant here, that (1) federal district courts have jurisdiction under the FSIA to enforce ICSID awards arising out of ECT arbitrations and (2) *forum non conveniens* is not a valid ground for dismissal in proceedings to confirm a foreign arbitral award.  The parties then filed supplemental briefs to reflect the developments of *NextEra Energy*.  *See* Resp't's Suppl. Br. in Supp. of Resp't's Mot., ECF No. 36 [hereinafter Resp't's Suppl.]; Pet'r's Suppl. Br., ECF No. 35 [hereinafter Pet'r's Suppl.].

## III.    LEGAL STANDARD

Spain moves to dismiss under Federal Rules of Procedure 12(b)(1) and 12(b)(6). *See* Resp't's Mem. at 15.

Under Rule 12(b)(1), the court must dismiss an action unless the plaintiff can establish by a preponderance of the evidence that the court possesses subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To make this determination, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).

Under Rule 12(b)(6), the court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must look only to the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (cleaned up).

## IV.    DISCUSSION

Spain originally made four arguments in support of its motion to dismiss: (1) the court does not have subject matter jurisdiction over this enforcement action under the FSIA; (2) the foreign sovereign compulsion doctrine bars enforcement; (3) the award is not entitled to full faith and credit; and (4) the doctrine of *forum non conveniens* favors dismissal of the case. *See generally* Resp't's Mem. Central to these arguments is Spain's unwavering contention that EU law voids the ECT's arbitration provision as between an EU Member State and an investor from another Member State such that no forum—including the ICSID tribunal and this court—has jurisdiction

or authority to issue or enforce an arbitral award arising out of BayWa's ECT dispute with Spain. *Id.* at 1–3.

The court first addresses the issues of jurisdiction and *forum non conveniens*, which were directly addressed by *NextEra Energy*, before turning to the remaining issues of full faith and credit and the foreign sovereign compulsion doctrine.  Though the court considers these arguments with a clean slate, it notes that Spain has tried and failed to advance all four arguments before other courts in this district numerous times on motions to dismiss and for summary judgment post-*NextEra Energy*.  *See, e.g.*, *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-cv-2701 (RC), 2024 WL 4298808 (D.D.C. Sept. 26, 2024); *Blasket Renewable Invs. v. Kingdom of Spain*, No. 19-cv-3783 (CJN), 2025 WL 2320368 (D.D.C. Aug. 12, 2025); *Infrastructure Servs. Lux. S.A.R.L. v. Kingdom of Spain*, No. 18-cv-1753 (LLA), 2025 WL 2320406 (D.D.C. Aug. 12, 2025); *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 20-cv-817 (JDB), 2025 WL 2336428 (D.D.C. Aug. 13, 2025); *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 20-cv-1708 (LLA), 2025 WL 2374517 (D.D.C. Aug. 14, 2025); *Blasket Renewable Invs. LLC v. Kingdom of Spain*, No. 20-cv-1081 (BAH), 2025 WL 3516146 (D.D.C. Sept. 11, 2025); *9Ren Holdings S.À.R.L. v. Kingdom of Spain*, No. 19-cv-1871 (TSC), 2025 WL 2779795 (D.D.C. Sept. 29, 2025); *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, No. 19-cv-1618 (TSC), 2025 WL 2779908 (D.D.C. Sept. 30, 2025).

### A.    *NextEra Energy*

Spain appears to concede that *NextEra Energy* settled—at least for now[1]—the issue of the court's subject matter jurisdiction.  *See* Resp't's Suppl. at 9.  It recognizes that the D.C. Circuit held that "jurisdiction exists under the FSIA's arbitration exception because the ECT itself is an

---

[1] Spain has filed a petition for certiorari that remains pending.  *See* Pet. for a Writ of Cert., *Kingdom of Spain v. Blasket Renewable Invs. LLC* Docket, No. 24-1130 (U.S. May 1, 2025).

'arbitration agreement' that is 'for the benefit of' private investors and therefore satisfies the FSIA's requirement that an arbitration agreement exists." *Id.*

The court agrees that it has subject matter jurisdiction under the FSIA to enforce the arbitral award. For the arbitration exception of the FSIA to withdraw a foreign sovereign's presumptive immunity, the court must establish three "jurisdictional facts": (1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement. *NextEra Energy*, 112 F.4th at 1100 (citing *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 & n.2 (D.C. Cir. 2015)). As in *NextEra Energy*, Spain does not dispute the existence of an arbitration award or treaty governing enforcement; it rather argues that there was no valid "arbitration agreement" between Spain and BayWa because EU law voids the ECT's arbitration provision as between an EU Member State and an investor from another Member State. Resp't's Mem. at 17–21; *see NextEra Energy*, 112 F.4th at 1101. But *NextEra Energy* unequivocally holds that, at least for purposes of subject matter jurisdiction under the FSIA, an "arbitration agreement" exists, and ECT signatories, including Spain, are not immune in federal district court from the enforcement of ECT arbitration awards rendered by the ICSID. 112 F.4th at 1104–05. Spain's subject matter jurisdiction argument is thus squarely foreclosed by *NextEra Energy*.

So too is Spain's *forum non conveniens* argument. Spain contends that, notwithstanding any other determination, the court should dismiss the action under the doctrine of *forum non conveniens* because there are adequate fora in the EU and the public interest will be served by the district court's abstaining from ruling on an issue of EU law. Resp't's Mem. at 27–31. But *NextEra Energy* resolves this issue, too. It states plainly that "binding circuit precedent dictates that '*forum non conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States.'"

112 F.4th at 1105 (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021)).  *Forum non conveniens* therefore cannot be the basis of dismissal.  *See also Blasket Renewable Invs.*, 2024 WL 4298808, at \*11 (explaining that dismissal on *forum non conveniens* grounds also is not warranted because the only issues for the court to consider are not of foreign law but of the court's duty pursuant to 22 U.S.C. § 1650a).

Because the court has subject matter jurisdiction under the FSIA and there is no dispute that Spain was properly served, *see generally* Resp't's Mem.; Return of Service, ECF No. 8, the court also has personal jurisdiction over Spain.  *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002) ("If service of process has been made under [28 U.S.C.] § 1608, personal jurisdiction over a foreign state exists for every claim over which the court has subject matter jurisdiction.").  So the court now turns to the merits.

### B.    Merits Arguments

The D.C. Circuit held in *NextEra Energy* that "the district courts have jurisdiction to enforce these arbitration awards," but it also specified that the holding "does not mean they must or should do so."  112 F.4th at 1104.  It expressly chose not to "address the merits question whether [the ECT]'s arbitration provision extends to EU nationals and thus whether Spain ultimately entered into legally valid agreements with the companies."  *Id.*  Spain therefore maintains its full faith and credit and foreign sovereign compulsion doctrine arguments in its supplemental briefs. Neither holds water.

### 1.    Full Faith and Credit

Congress mandated that the "pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  28 U.S.C. § 1650a(a).  But Spain

8

insists that the court should not give full faith and credit to this ICSID arbitral award because the *ICSID tribunal* lacked jurisdiction to issue it. *See* Resp't's Mem. at 26–27; Resp't's Suppl. at 10–18. Spain expends considerable effort describing the primacy of EU law among EU Member States, substantive EU case law, and the European Commission's views to drive this point home. *See* Resp't's Mem. at 3–24; Resp't's Suppl. at 2–18.

But Spain does not contend with the fact that "the full faith and credit obligation owed final judgments 'precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or validity of the legal principles on which the judgment is based.'" *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 519 (D.C. Cir. 2023) (quoting *Milliken v. Meyer*, 311 U.S. 457, 462 (1940)). "[A] court may not deny a judgment full faith and credit because 'it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits.'" *Id.* (quoting *V.L. v. E.L.*, 577 U.S. 404, 407 (2016)). That bar on relitigation extends "to questions of jurisdiction." *Id.* at 520 (quoting *Durfee v. Duke*, 375 U.S. 106, 111 (1963)). The only thing for this court to do is to satisfy itself that (1) "it has subject-matter and personal jurisdiction," (2) "the award is authentic," and (3) "its enforcement order tracks the award." *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 268 (D.D.C. 2022).

The court is satisfied. It has already determined that it has subject matter and personal jurisdiction. *See supra* Section IV.A. And the parties do not dispute the award's authenticity or the court's ability to issue an enforcement order that tracks the award. The court therefore finds that the ICSID's arbitral award is entitled to full faith and credit.

Spain may continue to disagree with the ICSID tribunal's jurisdictional determination. But "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the

second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee*, 375 U.S. at 111.  The ICSID tribunal in this case considered and rejected Spain's jurisdictional arguments twice—once during the initial arbitration and again during the annulment proceedings.  *See* Resp't's Mem. at 14; ICSID Annulment Decision ¶¶ 169–195.  The question of the tribunal's jurisdiction thus has been "fully and fairly litigated."  *See Durfee*, 375 U.S. at 111.  "Full faith and credit's bar against relitigation is unyielding."  *Valores Mundiales*, 87 F.4th at 519.  Spain therefore cannot succeed on the merits by "recycl[ing] a losing jurisdictional argument."  *See Tethyan*, 590 F. Supp. 3d at 276; *see also Blasket Renewable Invs.*, 2024 WL 4298808, at *8 ("To the extent that the Arbitral Tribunal may have erred in carrying out its responsibilities under the ECT and the ICSID Convention, Spain is without remedy in this Court.").

### 2.    Foreign Sovereign Compulsion Doctrine

Finally, Spain contends that the foreign sovereign compulsion doctrine "and the principles of comity that underlie it" bar this court from enforcing the arbitral award.  Resp't's Suppl. at 18–20; *see* Resp't's Mem. at 25–26.  Every court in this district to have considered this argument has rejected it as to ICSID arbitral awards such as the one before this court.  *See Blasket Renewable Invs.*, 2024 WL 4298808, at *12–14 ("The Court concludes that these comity principles [underlying the foreign sovereign compulsion doctrine] do not favor barring enforcement of a judgment . . . where Petitioner seeks recognition of an ICSID award.  . . . [I]t is 'the central precept of comity' that 'the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations.'" (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984))); *Blasket Renewable*

*Invs.*, 2025 WL 2320368, at *5 ("To the contrary, international comity favors *enforcement* in this context."); *Infrastructure Servs.*, 2025 WL 2320406, at *6 ("[T]he D.C. Circuit has never applied the foreign sovereign compulsion doctrine [in the ICSID arbitral award context], and Spain offers no authority to support the application of the doctrine in this context."); *Blasket Renewable Invs.*, 2025 WL 2336428, at *8–9 ("[C]omity does not provide a disgruntled party with a runaround of § 1650a. . . . In probing for bona fide compulsion, courts have required defendants asserting the foreign sovereign compulsion doctrine to show that non-compliance with foreign law portends a significant risk of substantial sanctions. But it is uncertain that Spain's payment of the award here would place Spain at substantial risk of sanctions." (cleaned up)); *Cube Infrastructure Fund*, 2025 WL 2374517, at *3 ("Spain cannot now argue that it is being unfairly compelled to follow the strictures of a treaty that it signed, which explicitly provides that final awards are binding and unappealable."); *Blasket Renewable Invs.*, 2025 WL 3516146, at *9 ("The 'elusive concept' that the United States should defer to EU courts out of respect for other sovereigns cannot overcome the concrete comity requirements adopted in an international treaty to which the United States is a party."); *9Ren Holdings*, 2025 WL 2779795, at *3 ("[E]ach court in this district that has considered a similar argument has agreed that the doctrine is inapplicable as applied to these ICSID arbitral awards."); *NextEra Energy*, 2025 WL 2779908, at *4 (same). Spain does not offer any novel perspectives here. The court therefore adopts the reasons set forth in these decisions and holds that neither the foreign sovereign compulsion doctrine nor its underlying principles of comity bar the court from enforcing the ICSID's arbitral award against Spain.

## V.   CONCLUSION

For the foregoing reasons, Spain's Motion to Dismiss the Petition or Stay the Proceedings, ECF No. 14, is denied. The parties shall meet and confer and by June 3, 2026, either (1) file a

Joint Status Report that proposes a schedule for summary judgment briefing, if necessary, or (2) submit a proposed judgment, if the parties believe the merits of the confirmation are now resolved.

Dated:  May 20, 2026                                       Amit P. Mehta
                                                United States District Judge